**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| **SUNTRUST MORTGAGE, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:11cv464** |
| ) | |
| **POWDER HOUSE MORTGAGE** ) | |
| **COMPANY, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

**JOINT STATEMENT REGARDING DISCOVERY DISPUTE**

**COME NOW** the Parties, SunTrust Mortgage, Inc. ("SunTrust") and Powder House Mortgage

Company, Inc. ("PHM") and file this Joint Statement regarding discovery.

<u>INTRODUCTION</u>

On November 3, 2011 PHM served its First Request for Production of Documents and Things on

SunTrust. On November 9, 2011, PHM served additional Interrogatories and a Second Request

for Production of Documents and Things. SunTrust served Objections and Answers to the

discovery. PHM's Motion to Compel is centered around SunTrust's objections to twelve requests

for production of documents and two interrogatories.

<u>RESOLVED DISPUTES</u>

SunTrust has withdrawn its objection and recited that all responsive documents were provided in

its initial disclosures. Request for Production of Documents 10, 12, and 13 will be withdrawn, as

the loans in question were manually underwritten and no automated underwriting system was

used. In response to Request for Production of Documents No. 14, SunTrust has provided the

Correspondent Seller's Guide in place at the time the Horton loans were made. Request for

Production No. 16 has been withdrawn, as loan was manually underwritten and no automated

underwriting system was used. With respect to Request for Production No. 21, SunTrust has

withdrawn the objection, and amended its answer to state that all pertinent insurance documents

have been provided in its initial disclosure. With respect to Request for Production No. 28,

SunTrust has withdrawn its objection and will provide any responsive documents in its custody

or control.

<u>SUNTRUST'S OBJECTIONS</u>

SunTrust has objected to PHM's Request for Production of Documents No. 15, which requests

"all documents relating to the STM Correspondent Seller Guide and/or SunTrust Mortgage Loan

Program, such as notes and comments, and all policies and procedures related thereto the time

the Horton loans were made." SunTrust's Correspondent Seller Guide runs over one thousand

pages in length, inclusive of all the various loan programs which SunTrust offered. Borrower

Horton was qualified under only one of these loan programs, and requests for notes, comments,

policies and procedures relating to any of the other loan programs is over broad and not related

to lead to admissible evidence. These programs have no bearing upon the Horton loans, and to

require SunTrust to search through every document produced in this time frame, whether or not

relevant to the loan program in question, would be unduly burdensome. SunTrust may have had

policies and procedures related to the use of automated underwriting systems. However, the

Horton loans were manually underwritten and any policies and procedures related to the systems

have no bearing upon this litigation. Request for Production No. 2 seeks all correspondence

between SunTrust and PHM from 2001 to the present. The loan in question was acquired by

SunTrust from PHM on or about January 23, 2007. This lawsuit revolves around the provision of

false, inaccurate or misleading information, in the form of a defective property appraisal, by

PHM to SunTrust. Correspondence unrelated to the Horton loan, but related to the 2600+ other

loans PHM sold to SunTrust, amounts to nothing more than a fishing expedition. This Request

would have SunTrust dig through every loan file it ever had with PHM to potentially locate

correspondence which has no bearing upon the facts of the Complaint, or the defenses PHM has

set forth. Accordingly, this Request is over broad and unduly burdensome, and not calculated to

lead to admissible evidence. Request for Production No. 19 seeks "all documents relating to

SunTrust's due diligence policies and procedures for purchasing loans from mortgage brokers."

SunTrust has provided in its initial discovery all documents relating to the due diligence actually

performed related to the Horton loans. Further, PHM was not a mortgage broker, but a

correspondent loan seller; the two programs are completely distinct. The Request is not time

limited in a reasonable fashion. PHM has defined the scope as "the time the Horton loans were

made, at the time the loan purchase agreement was signed". The length of this time period is left

vague, and the two periods listed are some six years apart. Policies and procedures which may or

may not have existed at the time the Correspondent Loan Purchase Agreement was signed are

simply not relevant. Further, internal policies and procedures for SunTrust are for the benefit of

SunTrust; the terms of the Correspondent Loan Purchase Agreement and the Correspondent

Seller Guide are what govern the relationship between the parties. Therefore, policies and

procedures have no bearing upon this litigation, and are unrelated to any defense asserted by

PHM. Request for Production No. 20 seeks "all documents relating to SunTrust's due diligence

policies and procedures for purchasing loans from mortgage brokers." SunTrust has provided in

its initial discovery all documents relating to the due diligence actually performed related to the

Horton loans. The Request is not time limited in a reasonable fashion. PHM has defined the

scope as "the time the Horton loans were made, at the time the loan purchase agreement was

signed". The length of this time period is left vague, and the two periods listed are some six years apart. Policies and procedures which may or may not have existed at the time the Correspondent Loan Purchase Agreement was signed are simply not relevant. Further, internal policies and procedures for SunTrust are for the benefit of SunTrust; the terms of the Correspondent Loan Purchase Agreement and the Correspondent Seller's Guide are what govern between the parties. Therefore, policies and procedures have no bearing upon this litigation, and are unrelated to any defense asserted by PHM. Further, PHM was not a mortgage broker, but was under the correspondent lender program. Interrogatory No. 13 requests that SunTrust identify the head of underwriting and all other persons responsible for establishing underwriting policies and procedures at the time SunTrust purchased the Horton loans. The identities of individuals who may have drafted underwriting policies and procedures is unrelated to any facts pled in the Complaint or any defense PHM has asserted. SunTrust has provided its underwriting guidelines. It is these written guidelines which form the contractual relationship between SunTrust and PHM. Further, SunTrust has already, in its initial disclosures, identified the person with corporate knowledge regarding underwriting at SunTrust. Any knowledge with respect to underwriting at the time of the Horton loans, from a corporate perspective, can be learned from deposition of this individual. Interrogatory No. 14 is particularly vague, in that SunTrust was unable to identify exactly what information PHM was seeking. To the extent PHM is seeking the identity of SunTrust's investor, it was clearly stated in the Complaint that SunTrust's investor was Fannie Mae. In the Motion to Compel, PHM asserts that individuals who assisted with funding the Horton loans are familiar with the underwriting process. This statement stems from a fundamental misunderstanding about the difference between funding and underwriting. These

two are separate and distinct functions in the life of a loan, and the individuals responsible for

funding, the cutting of actual checks, are not involved in the underwriting of loans.

For the foregoing reasons, SunTrust requests this Court deny the Motion to Compel.

<u>POWDER HOUSE'S POSITION AS TO REMAINING ISSUES</u>

Many issues are resolved. Some issues are narrowed but remain unresolved.

As to PHM's First Document Request, Request No. 1 therein, PHM has requested Fannie Mae

documents in SunTrust's possession, custody or control, relating to Fannie Mae's repurchase and

indemnification.   SunTrust's counsel sent two links to Fannie Mae guidelines or standards

applicable to the Fannie Mae-SunTrust relationship, but was not able to access the documents

contained there.   Discovery in the case references Fannie Mae guidelines that pertain to Fannie's

Mae's complaints about the appraisal for the loan at issue.   PHM requests the applicable

guidelines and any agreement between SunTrust and Fannie Mae.    This production may simply

involve obtaining an appropriate password or downloading system with which to view the links

provided.

Issues as to Requests 10, 12 and 13 are resolved.

As to Request No. 14, PHM obtained a table of contents for a Correspondent Seller's guide

independently, and SunTrust located various updated sections and provided those documents.

SunTrust did not actually provide the entire guide.  PHM requests only the entire table of

contents from the Guide, to confirm no other sections are relevant.

As to Request No.  2, as to correspondence, PHM requests correspondence between SunTrust

and PHM during the term of their relationship.    PHM does not need correspondence as to every

loan, and withdraws the request to that extent, but requests all correspondence regarding the

loans at issue, all correspondence regarding the signing of the agreement between the two

parties, and all correspondence regarding issues with appraisals and underwriting.   PHM's

defense, in part, is that SunTrust knew about all the infirmities in the appraisal that SunTrust

later complained about, at the time of SunTrust's underwriting, and thus could not later claim

SunTrust in fact did not know about these alleged deficiencies.   SunTrust approved the appraisal

after some follow-up requests at the underwriting stage, but when met with a request from

Fannie Mae years later SunTrust claimed the appraisal was "indefensible," based on an analysis

of the same issues that arose during the underwriting process.   Correspondence relating to

appraisals, the Agreement at issue, as well as the loans at issue, may shed light on PHM's

defense. .

As to Request No. 15, regarding policies and procedures, certain policies and procedures have

been obtained as part of the resolution of the dispute as to No. 14, relating to SunTrust's

Correspondent Seller's Guide.   If SunTrust says there are no other applicable policies and

procedures, so be it, but at least PHM should be able to review the Guide's table of contents to

determine if other sections are relevant.   Also there should be some policies and procedures

relating to SunTrust's policies on repurchasing loans from Fannie Mae, which overlaps with

another request.  Internal policies and procedures are highly relevant, particularly if SunTrust in

fact did not follow its internal policies and procedures in underwriting the loan.   The documents

produced show, in PHM's view, that SunTrust was aware of the deficiencies that it later

complained about years alter to PHM.   Whether SunTrust followed its own procedures may shed

light on PHM's defense.

As to Request No. 19, as to purchase of loans from mortgage brokers, PHM withdraws that

request.

As to Request No. 20, as to policies and procedures regarding repurchase from Fannie Mae, this request overlaps with other requests and is relevant to whether SunTrust should have simply agreed to repurchase/indemnify Fannie Mae.

As to Request No. 21 as to insurance, SunTrust withdrew its objection but did not provide any insurance policies of which PHM is aware.  If there is nothing else, SunTrust should confirm that is so.

As to Request No. 28, relating to table funding procedures, any such documents were purportedly incorporated into the Agreement on which SunTrust is suing, and should be relevant. SunTrust has produced a section of its guide on table funding procedures.  If there is no "table funding overlay" as referenced in the Agreement, then SunTrust should so state.

As to Interrogatory No. 13, for persons responsible for underwriting procedures at the time the Horton loans were made, or otherwise involved in underwriting procedures at the time , SunTrust refused to identify such persons, and proffered a corporate witness who was not even employed by SunTrust until 2008, at least one year after the Horton loans were underwritten.

PHM withdraws Interrogatory No. 14.

Richmond, Virginia
February 24, 2012

Respectfully submitted,

WOLFE & WYMAN LLP

_____/S/_____
L. Scott Bruggemann, Esq.
VSB No. 42634
Email: sbruggemann@wolfewyman.com
901 E. Byrd Street, Suite 1105
Richmond, VA 23219
804-915-7556 (phone)
804-417-4755 (fax)
Attorney for SunTrust Mortgage, Inc.

_____ /s/ George R. A. Doumar_____
George R. A. Doumar, Esq. (#26490)
James R. Harpold (#74967)
Doumar Martin, PLLC
2000 N. 14th Street, Suite 210
Arlington, VA 22201
Phone: 703-243-3737
Fax:  703-524-7610
gdoumar@doumarmartin.com